Jasen, J.
This is an article 78 proceeding to review a determination by the Commissioner of the Nassau County Police Department dismissing petitioner from the police department.
Complainant, a 21-year-old woman, was driving along a lonely road in petitioner’s area of patrol at 1:15 in the morning when she was stopped for speeding by a Nassau County police officer. Later that day, complainant accused petitioner, a patrolman in the Nassau County Police Department, of improper sexual conduct toward her while parked with her in his police car.
A police disciplinary hearing concerning this charge was held at which petitioner was present and represented by counsel. A summary of the evidence presented at this hearing follows.
Complainant testified that she was stopped for speeding by petitioner at about 1:15 on the morning of March 17, 1966. She explained to petitioner that her excessive speed resulted from an urgent need to return home to go to the bathroom, and requested him not to give her a ticket. Petitioner then allegedly suggested that complainant relieve herself in the ladies’ room of a nearby beach club for which he possessed the key. Upon arriving at the dark and isolated club, complainant learned that petitioner did not have the key. Complainant stated that petitioner then made sexual advances toward her and committed a sexual act in her presence while parked with her in his patrol *332 car. Petitioner then drove complainant back to her car, returned her license and registration, and informed her that his name was “ Al Shone” (phonetic) and to mention “Big Al ” if she had any trouble with the police in the future. Complainant admitted that she delayed several hours before making an official complaint, did not initially explicitly describe each sexual act petitioner committed, and later attempted to withdraw her complaint. She gave possible public notoriety and fear of a slander suit as reasons for her attempt to withdraw her charge.
Complainant was able to identify petitioner from a lineup of six patrolmen who were identically dressed and one of whom was similar in height, build and physical characteristics to petitioner. The physical description given by complainant before identifying petitioner at the lineup was reasonably accurate as was her description of the area of the incident and the lighting conditions which prevailed there.
Petitioner admitted that he was sometimes called “ Big Al,” and two witnesses at the hearing referred to him as “Al.” However, petitioner denied the misconduct alleged by complainant and maintained that he was in the company of two Hempstead Town Park security guards during most of the time of the alleged incident, leaving twice for short periods not in excess of 10 minutes. The two guards corroborated petitioner’s alibi.
Finally, the testimony of Inspector Tobin, petitioner’s commanding officer, indicates that petitioner was the only patrolman assigned to the area of the incident at the time complainant testified it took place.
After considering the evidence adduced at this hearing, the Trial Commissioner determined that substantial evidence established that petitioner had made “ sexual advances towards a female person and committ[ed] a sexual act in the presence of said female person while parked with said female in Departmental Car Number 112 ”, and recommended that the Police Commissioner of Nassau County impose appropriate disciplinary action. The Police Commissioner confirmed the findings and recommendations of the Trial Commissioner and ordered petitioner dismissed from the police department.
*333 Petitioner then commenced this article 78 proceeding to revoke or modify the Police Commissioner’s order dismissing him from the force. The Appellate Division vacated the Police Commissioner’s determination because “the admission of the results of the polygraph tests [at the disciplinary hearing] was improper [citation omitted] as was also the admission of the hearsay reports of the 1961 unverified incident which petitioner had never been called upon to refute.”
In addition to the reasons given by the Appellate Division for reversal, the petitioner maintains that the Police Commissioner’s determination is not supported by “ substantial evidence.”
There is no dispute that a hearsay report of an unverified 1961 complaint accusing petitioner of sexual misconduct while a patrolman was considered at the disciplinary hearing. However, the record discloses that petitioner failed to object to receipt of this evidence. In the absence of a proper objection at the administrative hearing, the issue of the admissibility of evidence is not preserved for our review. (Matter of Leogrande v. State Liq. Auth., 19 N Y 2d 418, 424.)
A more difficult problem is presented by the admission in evidence, over objection, of the results of certain polygraph tests (commonly known as lie detector tests) administered to the complainant and two defense witnesses.
Compliance with the technical rules of evidence is not required in disciplinary proceedings before a Police Commissioner or other administrative officer. (Civil Service Law, § 75, subd. 2; Matter of Roge v. Valentine, 280 N. Y. 268, 278-280; cf. 1 N Y Jur., Administrative Law, § 121.) Generally, all relevant, material and reliable evidence which will contribute to an informed result should be admissible in disciplinary proceedings for there is a public interest in ascertaining the truth of charges brought against public employees. (Cf. 1 Benjamin, Administrative Adjudication in the State of New York [1942], pp. 171-181; cf. 2 Davis, Administrative Law Treatise, §§ 14.01-14.07 [1958].) Nevertheless, no essential element of a fair trial can be dispensed with unless waived without rendering the administrative determination subject to reversal upon review. (Matter of Hecht v. Monaghan, 307 N. Y. 461; Matter of Greenebaum v. *334 Bingham, 201 N. Y. 343, 347; Matter of Hilton Hotels Corp. v. Epstein, 14 A D 2d 399, 402, affd. 11 N Y 2d 978; Matter of Shields v. Hulls, 21 A D 2d 745.)
Applying this standard, it is clear that the results of the polygraph tests were inadmissible. We have refused to take judicial notice of the effectiveness of polygraph tests in criminal trials because of a lack of general scientific recognition of its efficacy. (People v. Forte, 279 N. Y. 204; cf. State v. Walker, 37 N. J. 2d 208 [1962], cert. den. 371 U. S. 850; cf. 3 Wigmore, Evidence [3d ed.], § 999.) The instant record is devoid of evidence concerning the general effectiveness of the polygraph. Further, no proper foundation was made establishing the reliability of the particular polygraph tests administered to complainant and the two defense witnesses in this proceeding. The test results indicated that all three witnesses were telling the truth. The results, however, are inconclusive to say the least since complainant’s testimony was at variance with that of the defense witnesses. It is true that the test results can be harmonized upon the hypothesis that the recollection of one or more of the witnesses was incomplete, but there is no evidence in the record establishing the reliability of the tests as to any witness. Evidence of the polygraph tests, therefore, was inherently without demonstrable probative value and was inadmissible within the context of this proceeding.
There are rare cases in which admission of evidence, not only technically inadmissible under the rules of evidence applicable to judicial proceedings, but also prejudicial in effect and without probative force, will violate the fundamentals of a fair hearing. (Cf. People ex rel. Shiels v. Greene, 179 N. Y. 195; cf. People ex rel. Moynihan v. Greene, 179 N. Y. 253; cf. 1 Benjamin, op. cit., supra, p. 173; cf. 2 Davis, op. cit., supra, § 14.08 [1958].) Decisional gloss interpreting section 7 (subd. [c]) of the Federal Administrative Procedure Act* (U. S. Code, tit. 5, § 556, subd. [d]) reveals that rarely has any Federal court held that the mere admission of incompetent evidence is reversible error. (N. L. R. B. v. Seine & Line Fisherman’s Union of San Pedro, 374 F. 2d 974 [9th Cir., 1967], cert. den. 389 U. S. 913; cf. Public Utilities, Comm. v. Poliak, 343 U. S. 451; cf. Southern Steve *335 doring Co. v. Voris, 190 F. 2d 275 [5th Cir., 1951]; cf. Willapoint Oysters v. Ewing, 174 F. 2d 676 [9th Cir., 1949], cert. den. 338 U. S. 860; cf. 2 Davis, op. cit., supra, § 14.08.) As pointed out by the Supreme Court in Bilokumsky v. Tod (263 U. S. 149, 157): “ To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process.” (Cf. Hornsby v. Allen, 326 F. 2d 605, 608 [5th Cir., 1964].)
Here, the very inconclusiveness of the polygraph test results nullifies any inference concerning truthfulness to be drawn from the tests and indicates a lack of substantial prejudice to petitioner. In view then of the general relaxation of evidentiary rules in administrative hearings, together with petitioner’s representation by counsel at the hearing and his opportunity to examine and explain all evidence considered by the Trial Commissioner, we hold that the erroneous consideration of the inconclusive polygraph test results did not violate petitioner’s right to a fair hearing.
The mere erroneous reception of this evidence then would not be sufficient basis for annulling the Police Commissioner’s determination if it is “ on the entire record, supported by substantial evidence.” (CPLR 7803, subd. 4; Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327, 332; Matter of Miller v. Kling) 291 N. Y. 65, 68; Matter of Beebe v. Kelly, 18 Misc 2d 910, 912; Yiannopoulos v. Robinson, 247 F. 2d 655 [7th Cir., 1957]; Willapoint Oysters v. Ewing, supra; cf. Moran v. School Committee of Littleton, 317 Mass. 591; cf. Bennett’s Rest. v. Industrial Comm., 127 Col. 271; cf. 2 Davis, op. cit., supra, § 14.08.) Judge Learned Hand classically formulated the substantial evidence test as whether “ in the end the finding is supported by the kind of evidence on which responsible persons are accustomed to rely in serious affairs.” (National Labor Relations Bd. v. Remington Rand, 94 F. 2d 862, 873 [2d Cir., 1938], cert, den. 304 U. S. 576.)
The ultimate question then is whether the evidence properly received and given its logical probative force demonstrates misconduct by petitioner warranting his dismissal. With the problem thus narrowed, our decision is clear. A review of the entire record discloses that there is substantial • evidence to *336 support the Police Commissioner’s findings of petitioner’s misconduct.
Complainant’s testimony, believed by the hearing officer, constituted substantial positive evidence of the charges. Dismissals have been sustained solely upon the testimony of a complaining witness where such testimony is not shown to be incredible or impossible as a matter of law. (See, e.g., Matter of Evans v. Monaghan, 306 N. Y. 312; Matter of Burke v. Bromberger, 300 N. Y. 248; Matter of Caputo v. City of Schenectady, 3 A D 2d 484.) Complainant’s story is not only credible and internally consistent, but is also supported by corroborating circumstances established at the hearing. For example, petitioner was the only patrolman assigned to the area at the time complainant testified the incident took place. Complainant’s physical description of petitioner was reasonably accurate, as was her description of the area of the incident and the lighting conditions which prevailed there, and her later identification of petitioner at a lineup was positive. Moreover, complainant knew that the policeman who molested her was known as ‘ ‘ Big A1,” an appellation which petitioner himself admitted to being known by.
Although complainant delayed several hours before making an official complaint of the incident and later attempted to withdraw the charges, these are the understandable reactions of a young woman who has been sexually molested and desires to avoid the embarrassment of public discussion of the incident. Complainant had no discernible motive for accusing petitioner of this misconduct (no ticket was issued) and her testimony is not incredible as a matter of law.
On the other hand, petitioner testified that he was in the company of two Hempstead Town Park security guards at the time of the alleged incident, and his alibi is corroborated by the guards. However, the Trial Commissioner, vested with the responsibility of passing upon the credibility of witnesses, chose to believe complainant’s testimony and the Police Commissioner confirmed his factual findings. Substantial evidence supports the Police Commissioner’s choice between the conflicting evidence and this court may not substitute its view even though we could have or might have arrived at a different conclusion. (Matter of Burke v. Bromberger, supra; People ex rel. Guiney *337 v. Valentine, 274 N. Y„ 331, 335; Matter of Stork Rest. v. Boland, 282 N. Y. 256, 267.)
It cannot be seriously argued, nor do we understand petitioner to so contend, that the dismissal imposed is inappropriate for the misconduct alleged.
Accordingly, the order of the Appellate Division should be reversed, and the Police Commissioner’s determination dismissing petitioner should be reinstated.
Chief Judge Fuld and Judges Burke, Gcileppi, Bergan, Keating and Beeitel concur.
Order reversed, without costs, and the determination of the Commissioner reinstated.

 Section 7 (subd. [e]) provides that “ Any oral or documentary evidence may be received” in an administrative proceeding.